JUSTICE REGNIER
dissenting.
*489 ¶20 I believe this is a troubling case and should be submitted for jury determination rather than disposed of through a summary judgment proceeding.
¶21 Certainly both the District Court and this Court are limited by the status of the record developed during the litigation and presented on appeal. Here, the deposition of Mr. Van Noten provides the only insight into the critical interview that took place on May 11,1995, when the Steinbacks applied for the nursing home insurance policy. Mr. Steinback is deceased and Mrs. Steinback did not testify by deposition nor was her affidavit presented in the summary judgment proceeding. Nonetheless, understanding the strict burden imposed on the moving party in a summary judgment proceeding, I believe there is a question of fact that could not be resolved by summary judgment, namely, whether the Bankers Life agent was sufficiently aware of Mr. Steinback’s condition to put him and his company on inquiry notice that further investigation into Mr. Steinback’s mental and physical status might be appropriate.
¶22 First, it is important to put this matter into context. The Steinbacks were solicited by Bankers Life to purchase nursing home insurance. They were elderly. Mr. Steinback was 75 years old and suffering from a myriad of medical conditions. Bankers Life was aware that he had heart disease, diabetes, “hardening of the arteries,” and vision difficulties associated with his diabetes. In fact, Mr. Steinback was ineligible to receive the standard policy because of his medical and physical condition and was sold a high risk policy specifically because of his condition. This high risk policy had fewer questions regarding the applicant’s health and when issued required higher premiums than the standard policy. Bankers Life, however, was more than happy to accept the Steinbacks’ application for insurance benefits and insure Mr. Steinback under its high risk policy without making any further inquiry into his medical history.
¶23 Second, it is also important to note that an executed medical authorization form was included with Mr. Steinback’s application. In other words, Mr. Steinback provided Bankers Life with full and unbridled authority to request any and all of his past medical records, submit them for scrutiny by its own underwriters and medical staff, and then make a fully informed judgment as to whether it wished to provide nursing home insurance to a 75-year-old man suffering from heart disease, diabetes, “hardening of the arteries,” and vision problems. In fact, most consumers of disability insurance fully expect insurers to *490 make such an investigation. That is the precise reason why insurers demand medical authorizations before issuing policies. Given the history of this case, however, it appears that the procedure followed by Bankers Life is to do a mass solicitation targeting the elderly, issue insurance policies without investigating medical histories, accept premiums, and ask questions later. It further appears that Bankers Life is only concerned about a prospective applicant’s medical status when a claim is filed. Then the investigation begins in an effort to deny the claim.
¶24 Mrs. Steinback, in my view, presented equivocal information to the agent regarding her husband’s mental and medical status. As the majority noted, she was specifically asked if her husband suffered any type of memory problems in the past and, according to Mr. Van Noten, she answered in the negative. Yet, she volunteered medical information concerning her husband that would suggest to anyone, especially considering her husband’s age, that he would be a high risk person to insure for nursing home insurance. Also, she volunteered that he suffered from “hardening of the arteries.” Although Mr. Van Noten testified that he associated that condition with Mr. Steinback’s heart condition, I would suggest that many individuals in Mr. and Mrs. Steinback’s generation would also associate “hardening of the arteries” with memory loss and other types of mental dysfunctions. In her brief filed with this Court, she directs us to both medical texts and case law in support of the proposition that “hardening of the arteries” is a condition that is associated with mental dysfunction in the elderly. Based only on Mr. Van Noten’s testimony, I believe he was confronted with ambiguous medical information from Mrs. Steinback regarding her husband. Mr. Van Noten and his company should have made further inquiry if they were concerned about Mr. Steinback’s insurability. If we construe the facts in a light most favorable to the Steinbacks, as we must do under our rules governing summary judgment, I believe there is a question of fact that could only be resolved by a jury.
¶25 I am even more concerned when reading the deposition of Mr. Van Noten. Mr. Van Noten’s standard procedure is to go through the application and ask the proposed insureds if they suffer any of the conditions described. If the proposed insured answers “no” or says nothing, then Mr. Van Noten marks “no” on the application. The proposed insured does not complete the application in his or her own handwriting, but Mr. Van Noten fills it out. When Mr. Van Noten was *491 questioned in his deposition about the specific question concerning a history of medical treatment or advice for Parkinson’s Disease, memory loss, Alzheimer’s Disease or any other organic brain disorder, he testified that he couldn’t remember whether the Steinbacks gave an actual response of “no” or whether they were simply silent. We don’t know if Mrs. Steinback, an elderly person herself, even heard or understood Mr. Van Noten’s question.
¶26 Considering the scenario that occurred in the instant case, I am not comfortable affirming the grant of summary judgment. I would reverse the judgment of the District Court and remand this matter for trial before a jury.
JUSTICES HUNT and TRIEWEILER join in the foregoing dissent.